NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BRADFORD F. MAYNE, | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 07-CV-0573 (DMC) |
| JOHN LAMBERT, *et al.*, | : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Defendant Ms. Fairweather's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) and motion for summary judgment pursuant to FED. R. CIV. P. 56; Defendants Jonathon Lambert, Anthony Williams, Wesley Harvey and Sharese Hodge's motion for summary judgment pursuant to FED. R. CIV. P. 56; and Defendant Laurie Schray, M.D.'s (collectively, with all moving defendants, "Defendants") motion for summary judgment pursuant to FED. R. CIV. P. 56. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Fairweather's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is **granted**; and the Complaint is **dismissed** *sua sponte* with respect to the remaining Defendants.

## I.    BACKGROUND

Plaintiff Bradford Forbes Mayne, Inmate #470630/SBI #377781C, ("Plaintiff") is a former New Jersey State Prisoner who was confined at Columbus House from December 4, 2006 through February 5, 2007. Columbus House is a Mental Health Residential Community Release

Program specifically designed to assist New Jersey inmates who have mental illnesses with reintegrating into the community. The Kintock group manages Columbus House.

In the Complaint, Plaintiff alleges that he was unable to attend religious services since he was placed in Columbus House in December 2006. Plaintiff claims that female residents were permitted to attend religious services, but male residents were not. Plaintiff further alleges that various staff members instructed him that male and female residents were not permitted to attend the same religious services due to security concerns.

Inmates in Columbus House are expected to follow The Kintock Group and the New Jersey Department of Corrections's rules and regulations. According to The State Treatment and Work Release Program Handbook provided by The Kintock Group, inmates who feel they were treated unfairly or in an unjust manner have the opportunity to file a grievance. To submit a grievance, an inmate must submit a statement to the Director who oversees the department related to the incident and outline the incident and attempt to informally resolve the issue. Within two working days, the Director or Senior Director will hold a meeting with the inmate and any other parties involved. A written summary of the meeting and any subsequent investigation is given to the inmate within ten working days.

Should the issue remain unresolved, the inmate may then contact the Senior Director within three days of the written response for a final administrative remedy. The Senior Director may then call a meeting of the parties and/or conduct a further investigation and will provide a final decision in writing within ten days of the meeting or investigation, at which point the inmate will have exhausted his or her administrative remedies.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) , all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In Bell Atl. Corp. v. Twombly, the Supreme Court clarified the FED. R. CIV. P. 12(b)(6) standard. See 127 S.Ct. 1955 (2007).  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  Bell Atl. Corp., 127 S.Ct. at 1968 (citing Conley, 355 U.S. at 45-46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp., 127 S.Ct. at 1965.

## III.   DISCUSSION

The Complaint is barred because Plaintiff has failed to exhaust all of his administrative remedies. The Prisoners Litigation Reform Act ("PLRA") requires prisoners asserting a claim under 42 U.S.C. § 1983 to first exhaust administrative remedies. See 42 U.S.C. § 1997e(a). Specifically, § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

3

The exhaustion requirement applies to prisoners who were in custody at the time they filed their original complaint. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion is mandatory. See Jones v. Bock, 127 S. Ct. 910, 918-19 (2007) (citing Porter, 534 U.S. at 524). 42 U.S.C. § 1997e(a) contains no futility exception that would excuse a failure to exhaust. See Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).

In Jones, the Supreme Court reiterated that the PLRA requires "proper exhaustion." 127 S. Ct. at 922-23 (citing Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006)). In Woodford, the Court stated that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without some orderly structure on the course of its proceedings." Woodford, 126 S. Ct. at 2386.

A.     Exhaustion Requirement

42 U.S.C. § 1915 provides that "[a]s used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." In assessing whether the exhaustion requirement applies to Plaintiff, a court must look to his status at the time he filed his complaint. See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002). Here, the record is undisputed that Plaintiff prepared this Complaint, dated the Complaint on January 9, 2007 and mailed it to the Court for filing – all while he was confined at Columbus House. Therefore, although the Complaint was entered and filed by the Court on February 5, 2007, the same day Plaintiff was paroled, Plaintiff nonetheless prepared and mailed the Complaint while he was still in the

4

Department of Corrections's custody and, as such, he was obligated to exhaust his administrative remedies. Therefore, the exhaustion rule applies.

B.      Remedies Outlined in the DOC's Inmate Handbook Meet the Definition of an "Administrative Remedy" Within §1997e(a)'s Exhaustion Requirement

In Concepcion v. Morton, the Court held that the PLRA's exhaustion requirement applies to the grievance procedure set forth in a DOC inmate handbook. See 306 F.3d 1347, 1348-49 (3d Cir. 2002). Therefore, Plaintiff was obligated to properly exhaust all available administrative remedies, including those provided by the Kintock Group State Treatment and Work Release Program Handbook since he was a resident of Columbus House before filing the Complaint. Plaintiff failed to exhaust all available administrative remedies, so the Complaint must be dismissed.

C.      Plaintiff Failed to Exhaust His Available Administrative Remedies

Plaintiff represented in the Complaint that he exhausted his administrative remedies because he spoke with various Defendants regarding his claims. A Columbus House inmate, however, is required to follow the grievance procedure set forth in the Handbook.  Merely speaking to various individuals, rather than complying with the grievance procedure, does not suffice exhausting his administrative remedies.

District courts may dismiss complaints under FED. R. CIV. P. 12(b)(6) *sua sponte* where appropriate. See Oatess v. Sobolevitch, 914 F.2d 428, 430 n.5 (3d Cir. 1990).  Therefore, based on the foregoing analysis, the Complaint is dismissed pursuant to FED. R. CIV. P. 12(b)(6). Fairweather's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is granted; and the Complaint is **dismissed** *sua sponte* with respect to the remaining Defendants. It is also

5

unnecessary to address Defendants' remaining arguments in light of this Court's holding regarding the Fed. R. Civ. P. 12(b)(6) motion. The Court recognizes that Plaintiff is *pro se*. Despite his *pro se* status, however, Plaintiff must comply with the rules of civil procedure. <u>See</u> <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that the procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that Fairweather's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is **granted**; and the Complaint is **dismissed** *sua sponte* with respect to the remaining Defendants.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          January    25   , 2008
Orig.:         Clerk
cc:            All Counsel of Record
               Hon. Mark Falk, U.S.M.J.
               File